## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.:

CHRIS JOHN CHRISTENSON,

      PLAINTIFF,

v.

CITY OF HOLLYWOOD, FLORIDA, a municipal corporation,
STEVEN DIEFENBACHER, individually, JOHN LORENZO, individually,
SGT. G. LOPEZ, individually, and ERIC SICRE, individually,

      DEFENDANTS.
_____/

## COMPLAINT

1)     This a civil action seeking money damages in excess of $15,000 dollars, exclusive of costs, interest, and attorney's fees, against the CITY OF HOLLYWOOD, Florida ("CITY"), STEVEN DIEFENBACHER, individually, JOHN LORENZO, individually, SGT. G. LOPEZ, individually, and ERIC SICRE, individually.

## PARTIES

2)     PLAINTIFF CHRIS JOHN CHRISTENSON [hereinafter PLAINTIFF] is a resident of Broward County, State of Florida.

3)     At all times material, DEFENDANT CITY was a municipal corporation and has its place of business in the City of HOLLYWOOD, Florida, was *sui juris*, and acted through its agents, employees, and servants including dispatchers and police officers. The Hollywood Police Department [hereinafter DEPARTMENT] is an agency of the CITY.

4)      Whenever the words "dispatcher" or police officer" is used, the words refer to dispatchers and police officers employed by the CITY.

5)      At all times relevant, Defendant STEVEN DIEFENBACHER was a police officer for the CITY.

6)      At all times relevant, Defendant JOHN LORENZO was a police officer for the CITY.

7)      At all times relevant, Defendant, SGT. G. LOPEZ was a police officer for the CITY.

8)      At all times relevant, Defendant ERIC SICRE was a police officer for the CITY.

9)      At all times material hereto, DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE acted in their individual capacities and in the course and scope of their employment as police officers for the CITY. Relief is also sought against DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE in their individual capacities.

10)     All conditions precedent to the filing of this lawsuit have been fulfilled pursuant to Florida Statutes §768.28.

## FACTS

11)     On or about June 9, 2012, through and including July 23, 2012, and to the date of filing of this complaint, PLAINTIFF resided at 3001 S. Ocean Drive, Apt. 309, in the City of HOLLYWOOD [hereinafter "apartment"].

12)     On or about June 9, 2012, the Broward Sheriff's Office [hereinafter BSO] received a 911 telephone call from a man who gave the address of 3001 S. Ocean Drive, Apt. 329, Hollywood, Florida. The man was not PLAINTIFF.

13)     At all times, BSO was the agency which received the 911 telephone calls. BSO would determine if the matter was an emergency and, if so, BSO would transfer the call to the police agency responsible for the location of the call.

14)     BSO attempted to transfer the call to the DEPARTMENT, but the 911 call disconnected.

15)     BSO informed the DEPARTMENT that the address given by the caller was 3001 S. Ocean Drive, Apt. 329, Hollywood, Florida.

16)     Because the call was made from an address within its jurisdiction, the DEPARTMENT accepted the responsibility with regard to the call.

17)     BSO then called the number back and the call went to voicemail.

18)     BSO again provided the address information to the DEPARTMENT that the caller had provided BSO during the incoming telephone call.

19)     BSO told the DEPARTMENT that it was unsure whether the address was 3001 S. Ocean Drive, Apt. 329 or 329 S. Ocean Drive, Apt 3001. Either way, apartment "309" was never stated.

20)     The DEPARTMENT recognized that there was an address of 3001 S. Ocean Drive in the CITY.

21)     The DEPARTMENT conducted an investigation to determine the correct address of the caller and determined that the correct address was 3001 S. Ocean Drive, Apt. 329, which belonged to Aric Weis.

22)     As a result, the DEPARTMENT dispatched an officer to 3001 S, Ocean Drive. Instead of going to Apt. 329, the officer went to Apt. 309 where the caller officer was not the PLAINTIFF.

23)     After questioning PLAINTIFF and his family, the officer determined he was at the wrong apartment and left.

24)     PLAINTIFF communicated with officials of the DEPARTMENT and he was assured that the DEPARTMENT would take measures to ensure that the incident would not be repeated.

25)     On or about July 23, 2012, the DEPARTMENT was transferred a 911 telephone call where a female voice stated:

"Don't hurt me. Don't hurt me, Aric. I have stuff in your house. Please calm down."

26)     The call then disconnected and the DEPARTMENT conducted an investigation to ascertain the identity of the caller and determine if an emergency existed by calling the number of the disconnected call which was the same number of the telephone call on or about June 9, 2012.

27)     The phone call was not answered and went to voicemail where the message identified the owner of the phone as Aric Weiss, the same person from or about June 9, 2012. A dispatcher again called the same number and a male answered.

28)     A female then began talking on the phone and identified herself as Lynn Garcia. She stated they were in her car on I-95 and they were headed to their residence of 3001 S. Ocean Drive, Apt. 329, the same address as the incident on or about June 9, 2012.

29)     Lynn Garcia identified the male who was the co-occupant of the vehicle as Aric Weis. Aric Weis was the same person involved in the incident of or about June 9, 2012.

30)     As a result, the DEPARTMENT dispatched DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE to 3001 S. Ocean Drive, Hollywood.

31)     Instead of going to Apt. 329, the apartment of Aric Weiss,, DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE went to the apartment of the PLAINTIFF which was Apt. 309.

32)     DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE pounded on the door of Apt. 309 and awakened PLAINTIFF.

33)     As PLAINTIFF started opening the door, DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE slammed the door causing it to strike PLAINTIFF in the torso and right side of his body.

34)     DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE then rushed in brandishing their guns, pointed them at PLAINTIFF and detained him.

35)     Initially, while PLAINTIFF was detained at gun point, DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE conducted a protective sweep.

36)    DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE questioned PLAINTIFF about the location of a female and PLAINTIFF tried to explain to them that they came to the wrong apartment as had occurred a month previously.

37)    PLAINTIFF was told to shut up and he was threatened with being tasered.

38)    At least one of DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE, as part of their common scheme and plan, started searching throughout the apartment, ransacking it, and opening drawers with the approval and knowledge of the other officers, but without permission of any occupant or owner and without lawful authority.

39)    In one of the drawers, PLAINTIFF kept his firearms.

40)    Upon finding the guns, the said officer seized them without permission of any occupant or owner and without lawful authority.

41)    Upon finding the guns, either STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ or ERIC SICRE yelled out "guns" and the remaining of DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE pointed their firearms at PLAINTIFF's head. One of the officers had his finger off the safe position and on the trigger.

42)    Although scared beyond description, PLAINTIFF asked for the guns to be lowered. While the firearms were eventually lowered, the firearms remained in the ready position in the officers' hands.

43)    DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE then questioned PLAINTIFF about why he had guns in his apartment and he stated that was his constitutional right.

-6-

44)     PLAINTIFF directed the officers to his money clip located on a table so DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE could see he had a concealed weapons permit and he was not a convicted felon. DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE turned a blind eye to the information PLAINTIFF was trying to explain to them they were in the wrong apartment and a similar event had occurred the previous month.

45)     DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE remained there detaining PLAINTIFF for at least 15 minutes and treated him hostilely and rudely throughout the entire time. They left without even a scintilla of a hint of apology.

46)     While the firearms were pointed at PLAINTIFF and other times while DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE were in PLAINTIFF's apartment, DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE threatened PLAINTIFF with injury by making threatening statements including but not limited to that if PLAINTIFF moved he would be shot in the head.

47)     All the actions in paragraphs 27 through 46 occurred without legal authority and without the without permission of any occupant or owner and without lawful authority.

48)     All actions performed by the employees of the CITY were done in the course and scope of their employment for DEFENDANT CITY.

## CAUSES OF ACTION

### COUNT 1
### FALSE ARREST/FALSE IMPRISONMENT - DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 1, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 1, the allegations of paragraphs 1 through 48.

49)     On or about July 23, 2012, by and through the actions of employees of the CITY, the CITY caused the detention/seizure of PLAINTIFF in the absence of probable cause that PLAINTIFF committed any criminal offense or any wrongdoing.

50)     The actions of employees of the CITY, in causing the detention/seizure of PLAINTIFF in the absence of probable cause, were taken in the absence of lawful authority. The actions of employees of the CITY constitute false arrest/false imprisonment of PLAINTIFF under Florida law.

51)     The false arrest/false imprisonment of PLAINTIFF was committed by employees of the CITY in the course and scope of their employment for DEFENDANT CITY.

52)     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and

damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a)      Judgment for compensatory damages in excess of $ 15,000 dollars;

b)      Cost of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 2
## TRESPASS - DEFENDANT CITY

For his cause of action against Defendant CITY in Count 2, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 48.

53)      On or about July 23, 2012, police officers and agents of the DEFENDANT CITY entered into and remained in the apartment of the PLAINTIFF without permission of any occupant or owner and without lawful authority.

54)      As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and

damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

  a)      Judgment for compensatory damages in excess of $15,000 Dollars;

  b)      Costs of suit;

  c)      Trial by jury as to issues so triable; and

  d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 3
## INVASION OF PRIVACY - DEFENDANT CITY

For his cause of action against Defendant CITY in Count 3, PLAINTIFF states:

   PLAINTIFF realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1 through 48.

55)      On or about July 23, 2012, police officers of the DEFENDANT CITY entered into and remained in the apartment of the PLAINTIFF and searched it including his furniture and possessions without permission of any occupant or owner and without lawful authority.

56)      At all times PLAINTIFF had an expectation of privacy in his private and personal apartment.

57)      As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation,

endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)    Judgment for compensatory damages in excess of $15,000 Dollars;

b)    Costs of suit;

c)    Trial by jury as to issues so triable; and

d)    Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 4
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS - DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 4, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 4, the allegations of paragraphs 1 through 48.

58)    As a result of the actions of or about July 23, 2012, including being struck by the door, PLAINTIFF suffered emotional distress and psychological trauma.

59)    The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

60)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously

existing condition. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

    a)    Judgment for compensatory damages in excess of $ 15,000 dollars;

    b)    Cost of suit;

    c)    Trial by jury as to issues so triable; and

    d)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 5
## NEGLIGENCE - DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 5, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1 through 48.

61)    CITY failed to create a system to ensure that police officers were not directed to the residences or addresses of persons who were not involved in the investigation of a criminal matter and criminal activity.

62)    Once informed of the mistake that an officer or about June 9, 2012 went to PLAINTIFF'S apartment to conduct an investigation regarding an incident that was not related to

him, the CITY failed to establish a process to ensure that police officers did not go to a wrong address.

63)     CITY knew, or had it exercised due care and proper diligence, should have known of the problems of its officers going to incorrect addresses.

64)     On or about June 9, 2012, and or about July 23, 2012, police officers went to the address of PLAINTIFF as a result of the negligent failure of the CITY to create and maintain a system to correctly dispatch its officers or by the negligent failure of its officers who were dispatched to correctly follow the instructions and information provided by dispatch which included the correct address for the location at which to conduct a criminal investigation.

65)     As a result of going to the apartment of the PLAINTIFF, the officers engaged in the actions described.

66)     CITY had a duty and responsibility to ensure that individuals do not suffer the harm alleged due its failure by directing, sending, causing or otherwise permitting its police officers to go to incorrect addresses.

67)     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a)      Judgment for compensatory damages in excess of $ 15,000 dollars;

b)      Cost of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 6
## BATTERY - DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 6, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1 through 48.

68)     The actions of the employees-agents of the DEFENDANT CITY in causing the door to strike PLAINTIFF constituted a harmful and/or offensive contact on the person of PLAINTIFF and occurred without permission of any occupant or owner and without lawful authority.

69)     The actions were intentional.

70)     Said harmful or offensive contact was committed by employee-agents of the DEFENDANT CITY in the course and scope of their employment.

71)     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering,. He suffered grievously, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

-14-

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)      Judgment for compensatory damages in excess of $15,000 Dollars;

b)      Costs of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.

### COUNT 7
### ASSAULT - DEFENDANT CITY

For his cause of action against DEFENDANT CITY in Count 7, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 7, the allegations of paragraphs 1 through 48.

72)      The actions of the employees-agents of the DEFENDANT CITY constituted an assault upon PLAINTIFF.

73)      Said harmful or offensive action was committed by employees-agents of the DEFENDANT CITY in the course and scope of their employment.

74)      The employees-agents, without lawful authority, consent and probable cause, intentionally threatened to do violence to PLAINTIFF coupled with an apparent present ability to do so, and in doing so created a well-founded fear in PLAINTIFF that such violence was imminent.

75)      As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation,

endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)      Judgment for compensatory damages in excess of $15,000 Dollars;

b)      Costs of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


**COUNT 8**
**FOURTH AMENDMENT FALSE ARREST/FALSE IMPRISONMENT CLAIM OF**
**PLAINTIFF COGNIZABLE UNDER 42 U.S.C. § 1983**
**DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and**
**ERIC SICRE**

For his cause of action against DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE in Count 8, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 8, the allegations of paragraphs 1 through 48.

76)     While DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE were acting under the authority of the State of Florida and under color of law as police officers of DEFENDANT CITY, they subjected PLAINTIFF to the deprivation of the rights and privileges secured to him by the Constitution of the United States including the

constitutional right not to be deprived of liberty and due process of law under the Fourth Amendment to the United States Constitution within the meaning of 42 U.S.C. § 1983.

77)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights.

78)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE :

a)    Judgment for compensatory damages in excess of $15,000 Dollars;

b)    Costs of suit;

c)    Trial by jury as to issues so triable;

d)    Judgment for punitive damages;

e)    Reasonable attorney's fees; and

f)    Such other relief as this Honorable Court may deem just and appropriate

-17-

**COUNT 9**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and**
**ERIC SICRE**

For his cause of action against DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE in Count 9, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 9, the allegations of paragraphs 1 through 48.

79)    The actions of DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community.

80)    These actions constitute a case in which the recitation of the facts to the average member of the community would arouse him resentment against the actors, and lead him to exclaim "Outrageous!"

81)    These actions constitute either the intentional or reckless infliction of mental suffering.

82)    These actions have caused severe psychological trauma and emotional distress to the PLAINTIFF which caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

83)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. He suffered grievously, was brought into public scandal with great humiliation,

endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE :

    a)    Judgment for compensatory damages in excess of $15,000 Dollars;

    b)    Costs of suit;

    c)    Trial by jury as to issues so triable;

    d)    Judgment for punitive damages; and

    e)    Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 10**
**FOURTH AMENDMENT ILLEGAL SEARCH OF PLAINTIFF COGNIZABLE UNDER**
**42 U.S.C. § 1983**
**DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and**
**ERIC SICRE**

For his cause of action against DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO,

SGT. G. LOPEZ and ERIC SICRE in Count 10, PLAINTIFF states:

PLAINTIFF realleges and adopts, as if fully set forth in Count 8, the allegations of

paragraphs 1 through 48.

84)     While DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G.

LOPEZ and ERIC SICRE were acting under the authority of the State of Florida and under color of

law as police officers of DEFENDANT CITY, they subjected PLAINTIFF to the deprivation of the

rights and privileges secured to him by the Constitution of the United States including the

constitutional right not to be free from unlawful searches and seizures under the Fourth Amendment

to the United States Constitution within the meaning of 42 U.S.C. § 1983.

85)     With regard to the violations of the constitutional rights of PLAINTIFF as alleged in

this count, the actions of DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT.

G. LOPEZ and ERIC SICRE were done with malicious intent, ill will, spite, intent to injure, evil

motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless

or callous indifference to PLAINTIFF's federally protected rights.

86)     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain

and suffering, loss of his freedom, disability, disfigurement, mental anguish, loss of income, loss of

capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously

existing condition. He suffered grievously, was brought into public scandal with great humiliation,

endured emotional distress in the form of shame, humiliation, degradation, mental suffering and

aggravation of his physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANTS STEVEN DIEFENBACHER, JOHN LORENZO, SGT. G. LOPEZ and ERIC SICRE:

a)    Judgment for compensatory damages in excess of $15,000 Dollars;

b)    Costs of suit;

c)    Trial by jury as to issues so triable;

d)    Judgment for punitive damages;

e)    Reasonable attorney's fees; and

f)    Such other relief as this Honorable Court may deem just and appropriate.


GARY KOLLIN, P.A.
Counsel for PLAINTIFF
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:              (954) 791-6565
garykollin@garykollinlaw.com

By: /s/ Gary Kollin
Florida Bar No. 282431